REINWALD O'CONNOR & PLAYDON LLP
A LIMITED LIABILITY LAW PARTNERSHIP

JERROLD K. GUBEN    3107-0
Pacific Guardian Center
Makai Tower, 24th Floor
733 Bishop Street
Honolulu, Hawaii 96813
Telephone:  (808) 524-8350
jkg@roplaw.com

Attorney for Debtor,
WESTERN APARTMENT SUPPLY
 & MAINTENANCE COMPANY

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>WESTERN APARTMENT SUPPLY<br>& MAINTENANCE COMPANY,<br>an California corporation,<br><br>               Debtor. | Case No. 04-00072<br>(Chapter 11)<br><br>*Hearing:*<br>Date:  May 16, 2005<br>Time:  9:30 a.m.<br>Judge:  Honorable Robert J. Faris |

## MOTION TO DISMISS CHAPTER 11 CASE

Western Apartment Supply & Maintenance Company, ("Western Apartment"), the Debtor, moves this Court for an Order dismissing the Chapter 11 case, without prejudice.

This Motion is based on 11 U.S.C. § 1112, the attached Memorandum, the Declaration of Carroll G. Davis and Exhibit attached thereto, and pleadings in this case.

DATED: Honolulu, Hawaii, March 31, 2005.

JERROLD K. GUBEN
Attorney for Debtor,
WESTERN APARTMENT SUPPLY
& MAINTENANCE COMPANY

2

REINWALD O'CONNOR & PLAYDON LLP
A LIMITED LIABILITY LAW PARTNERSHIP

JERROLD K. GUBEN   3107-0
Pacific Guardian Center
Makai Tower, 24th Floor
733 Bishop Street
Honolulu, Hawaii 96813
Telephone:  (808) 524-8350
jkg@roplaw.com

Attorney for Debtor,
WESTERN APARTMENT SUPPLY
 & MAINTENANCE COMPANY

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>WESTERN APARTMENT SUPPLY<br>& MAINTENANCE COMPANY,<br>an California corporation,<br><br>          Debtor. | Case No. 04-00072<br>(Chapter 11)<br><br>*Hearing:*<br>Date:  May 16, 2005<br>Time:  9:30 a.m.<br>Judge:  Honorable Robert J. Faris |

## MEMORANDUM OF LAW; EXHBIT A

Western Apartment Supply & Maintenance Company ("Western Apartment"), the Debtor, submits this Memorandum in Support of its Motion to Dismiss Chapter 11 Case.

# I.   BACKGROUND

On January 12, 2004, the Debtor filed for Chapter 11 and continued to operate the Maui Oceanfront Inn ("MOI") in Kihei, Maui, Hawaii.

The Debtor has two secured creditors, a first mortgage in favor of La Jolla Loans and a second mortgage in favor of Mr. John Santero.

The Debtor entered into a several cash collateral orders with La Jolla Loans, which orders continue to the present and have been incorporated in the Definitive Agreement, approved by the Court on March 28, 2005.

The Debtor is current with all of its post-petition expenses, including all state and federal taxes, and U.S. Trustee's fees and related expenses.

The Debtor, La Jolla Loans and Grand Pacific Finance, a first trust deed holder on the Hawthorn Suites, San Diego California and a secured creditor of Great West Properties, have entered into a Definitive Agreement which outlines the rights and responsibilities of the parties as they relate to the obligations of the secured creditors, including certain unsecured creditors and ground lessors.   See Order of March 28, 2005.

The terms of the Definitive Agreement, and other orders entered in this case will be binding on the parties, including Western Apartment, when the case is dismissed.

4

The Debtor is presently negotiating with various financial institutions and professionals to convert the Maui Oceanfront Inn to a timeshare operations.

One of the conditions for the financing of the timeshare conversion is that Western Apartment exit bankruptcy. Even with a dismissal of the Chapter 11 case, the operative orders entered by this Court, including the comprehensive Definitive Agreement are operative and enforceable post-dismissal. The Definitive Agreement approved by this Court on March 28, 2005, specifically provides for post-dismissal enforcement. None of the pre-petition debts will be discharged and all of the claimants will retain all of their rights and claims against Western Apartment.

## ARGUMENT

A.   A CHAPTER 11 CASE MAY BE DISMISSED.

Section 1112 allows a debtor to voluntary dismiss a Chapter 11 case, with Court order.

In this case, the Debtor operates the Maui Oceanfront Inn located in Kihei, Maui, Hawaii.

Maui Oceanfront Inn is security for the loans to the first mortgagee, La Jolla Loans, and second mortgagee, John Santero.

On March 28, 2005, this Court entered an Order Re: Motion to Approve Stipulation for Modification of Automatic Stay and Cash Collateral Order and Definitive Agreement, which provides for the payment of Grand Pacific Financing

5

and La Jolla Loans as per the loan documents and other obligations listed on Exhibit A hereto.

As per the Definitive Agreement, upon the dismissal of the case, the Debtor will continue to be obligated to pay La Jolla Loans, Grand Pacific Finance and the amounts to the parties listed on Exhibit A, incorporated in the Definitive Agreement. In addition to the obligations listed on Exhibit A, the Debtor will continue to be obligated to the pre-petition creditors, since the Debtor will not be discharged.

As a condition of the dismissal, the Debtor will pay all quarterly fees of the United States Trustee and file the Monthly Operating Reports current.

With the Definitive Agreement and the other orders entered by the Court upon the dismissal of the Chapter 11, the Debtor will continue to operate and pay all post-petition and pre-petition expenses. The Debtor is not seeking a discharge of any indebtedness and is current on its post-petition expenses including post-petition payments to the secured creditor, La Jolla Loans, and the ground lessor, State of Hawaii, Department of Land and Natural Resources, and all state and federal taxes.

The creditors would be better served by a dismissal and operation of the Maui Oceanfront Inn. See Declaration of Carroll G. Davis.

U.S. Bankruptcy Court - Hawaii #04-00072 Dkt # 288 Filed 03/31/05 Page 6 of 29

While a debtor's request for a voluntary dismissal is not automatically granted, in this case, where the financing of the conversion of the MOI to a time share operations may be contingent on Western Apartment leaving bankruptcy, there are sufficient reasons to support a dismissal of the Chapter 11 case, without prejudice.

**CONCLUSION**

Based on the Motion, the Memorandum and the Declaration of Carroll G. Davis, the Debtor requests an Order dismissing the case.

DATED: Honolulu, Hawaii, March 31, 2005.

JERROLD K. GUBEN
Attorney for Debtor,
WESTERN APARTMENT SUPPLY
& MAINTENANCE COMPANY

**Definitive Agreement for (a) Forbearance, (b) Use
of Cash Collateral and (c) Termination of Bankruptcy Stay
as to La Jolla Loans, Inc.**

This Agreement ("Agreement") is by and between Western Apartment
Supply and Maintenance Company, a Debtor-in-Possession in <u>In re Western
Apartment Supply and Maintenance Company</u>, Case No. 04-00072 (Bankr.D.
Hawaii) ("Western"), Great West Properties, Inc., a Debtor-in-Possession in <u>In re
Great West Properties, Inc.</u>, Case No. 04-00073 (Bankr.D.Hawaii) ("Great West")
(Western and Great West being collectively called "Debtors"), Carroll G. Davis
("Davis"), as guarantor of certain obligations of the Debtors, and La Jolla Loans,
Inc., a California corporation ("La Jolla"), a secured creditor. It relates, inter alia, to
the Maui property of Western described in the attached Exhibit A and to the San
Diego property of Great West described in Exhibit B, and commonly known as
Hawthorne Suites. The reference date of this Agreement is January 13, 2005.

IT IS HEREBY AGREED:

1.    <u>Allowance of Claim</u>. With respect to the mortgage dated March
12, 2001 and recorded with the Bureau of Conveyances of the State of Hawaii on
March 14, 2001, La Jolla has a first priority secured claim, and that claim is allowed
against Western in the liquidated amount of Ten Million Four Hundred
Twenty-Seven Thousand Seven Hundred Five and No/100 ($10,427,705.00), plus
per diem interest of $4,142.51 per day from and after Jan. 15, 2005. This same

\

| EXHIBIT A |

indetbedness is also secured by a second priority Deed of Trust (the "San Diego Trust Deed") in favor of La Jolla on a ground lease of real property located in San Diego, California (the "San Diego Property") currently leased by Great West, and described in Exhibit B. This secured claim of La Jolla will be hereafter reduced by all payments made to La Jolla and designated below as principal, but not by the Extension Payments described below.

    2.   <u>Loan is In Default</u>. The amount of Ten Million Four Hundred Twenty-Seven Thousand Seven Hundred Five and No/100 ($10,427,705.00), plus interest at an annual rate of 14.5% which is $4,142.51 per day, from and after Jan. 15, 2005, is owing, payable and due from Western and Great West to La Jolla. This amount is accepted by all parties as correct, in default and due for all purposes (including, without limitation, the action in the Hawaii Circuit Court known as Civil No. 03-1-0260(2), <u>La Jolla Loans v. Western Apartment Supply & Maintenance</u> ("the Maui foreclosure action"), Bankruptcy Cases No. 04-00073 and 04-00072, and any other foreclosure action, action to enforce the personal guaranty of Carroll G. Davis ("Davis"), or other proceedings brought by La Jolla arising from a default in this Agreement by Western or Great West. Western shall, within five business days after delivery to Western of that pleading by La Jolla, sign a stipulated decree of foreclosure in the Maui foreclosure action consistent with the terms stated above, which shall be held unfiled by La Jolla so long as Debtors are not in default under this Agreement. Within five business days of the bankruptcy court approvals of the

2

stipulations, Western will sign and deliver to La Jolla a stipulated decree of foreclosure in the Maui action, to be prepared by La Jolla and to be retained by it for filing with the state court in the foreclosure action only in the event of a default by Western or Great West under this Agreement.

3. Obligations of Debtors During Forbearance Period. From the date of the court approvals of this Agreement in the bankruptcy cases of Western and Great West,

a. Commencing on the first day of the first month following Court approval, Western will pay La Jolla a monthly Extension Payment which will be in an amount not less than $47,000. The Extension Payment shall be comprised of (i) the monthly payments which Sarento's On the Beach, LLC ("Sarento's) makes (or is obligated to make) to Western under the terms of that certain Restaurant Operating Agreement dated September 20, 2000 between Western and Sarento's (the "Sarento's Payment") plus (ii) an additional amount per month from Western not less than $20,000 plus (iii) any amount necessary to bring the Extension Payment to an amount not less than $47,000. If the Sarento's payment for any month is less than $27,000, Western shall be obligated to pay the shortfall in order to be entitled to have any pending foreclosure sales postponed under this Stipulation. The following examples are offered to aid interpretation: (a) if the Sarento's Payment for a given month is $24,000 then the Western Payment would be $23,000 for a total of the minimum amount of $27,000; (b) If the Sarento's Payment is

3

$29,000, the Western payment would be the minimum of $20,000 for a total of $49,000. The Extension Payment(s) must be made on the dates provided in Exhibit C until the Maturity Date specified herein or the Extended Maturity Date described in Paragraph 5. Western shall give Sarento's written instructions (with copies to La Jolla) to remit the Sarento's payments directly to La Jolla, and to provide confirmation of the date and amount of the payment to Western. THE EXTENSION PAYMENTS WILL BE DEEMED (i) ALLOWED INTEREST ON LA JOLLA'S SECURED CLAIM AND (ii) CONDITIONS PRECEDENT TO THE DEBTORS' USE OF LA JOLLA'S CASH COLLATERAL FOR THE PERIOD FROM THE ISSUANCE OF THE ORDERS FROM THE BANKRUPTCY COURTS APPROVING THIS AGREEMENT.

       b.    By the later of February 19, 2005, or five business days after they are received or made by the Debtors, Debtors will provide La Jolla with legible copies of any past and future filings and communications between Western or Great West and either the County of Maui or the State of Hawaii, and other existing or future correspondence as to the operation of the Maui Oceanfront Inn ("MOI") or the San Diego property, or relating to land use, variance, conversion to timeshare and condominium or horizontal property regime filing, loan applications, loan approvals, government permits or consents, including (upon request by La Jolla) all reports and analysis prepared by any expert, consultant or other professionals. Debtors shall also provide La Jolla with the Monthly Operating

4

Reports. Debtors shall provide La Jolla with evidence as to the payment of the State of Hawaii, Department of Land and Natural Resources Lease No. S-4212.

      c.     Western and Great West will timely pay and perform all covenants under any lien, lease, deed or trust or other interest senior to that of La Jolla with respect to the collateral of La Jolla. The Debtors will keep their respective Maui and San Diego properties fully insured and in good order and repair, will timely perform and observe all leasehold covenants affecting the real property and improvements that are La Jolla's collateral. Western will take all steps necessary to maintain its affiliation with Best Western. Any replacement of La Jolla's present collateral will become La Jolla's collateral with the same priority and extent La Jolla has in the present collateral, without further notice or recordation. Debtors will notify La Jolla of all intended or actual replacements of the collateral of La Jolla.

      d.     La Jolla will forebear on a month-to-month basis from all enforcement actions with respect to the mortgage and deed of trust held by La Jolla or the personal guaranty of Davis unless (i) there is a default of any obligations of Western and Great West under this Agreement, or (ii) Grand Pacific Finance succeeds in modifying the automatic stay in Case No. 04-00072 against any action to enforce Grand Pacific's deed of trust against the San Diego property. IN DETERMINING WHETHER LA JOLLA'S OBLIGATION TO FOREBEAR HAS BEEN TERMINATED, TIME IS OF THE ESSENCE AS TO ALL DEFAULTS BY WESTERN OR LA JOLLA.

5

e.   Any default by Great West under any lien that is senior to the lien of La Jolla, and any modification of the stay to permit the foreclosure of any lien on Great West senior to the lien of La Jolla, and any foreclosure or unstayed proceedings to commence foreclosure of any lien junior to that of La Jolla, and any default by Debtors under any lease that forms a part of the collateral of La Jolla, or any violation of any covenant (other than covenants relating to payments of principal, interest or other costs or charges owed to La Jolla) under the Western Mortgage or the Great West deed of trust in favor of La Jolla, will be a default under this Agreement.

f.   Western will continue with and diligently prosecute proceedings before the County of Maui to resolve all non-conforming use issues regarding Western's property and Western's compliance with County of Maui requirements. Any agreement with any governmental agency will require La Jolla's consent, which consent will not be unreasonably withheld, provided Western is not in default under this Agreement.

g.   Western and Great West will provide La Jolla and La Jolla's legal counsel with a complete copy of any report or document filed with the Bankruptcy Court or the U.S. Trustee within two business days of its filing.

4.   Effect of Extension Payments; Subordination to Extension Payments. The Extension Payments required above do not constitute a cure or waiver of any pre-petition default. Any prepayment of principal by Great West or

6

Western will not reduce the amount of the Extension Payments or change their character or allocation from interest to principal. All management compensation and compensation to any professionals of the bankruptcy estates of Western or Great West are subordinated to the Extension Payments to which La Jolla is entitled under this Agreement.

5. <u>Certain Obligations and Agreements Effective upon Court Approval of Agreement</u>. Effective upon court approval of this Agreement,

a. Western and Great West waive all objections to or defenses on the note and mortgage, waive any right to bifurcate, allocate or otherwise modify or impair the monetary obligation to La Jolla or any security for that obligation, acknowledge that the obligation to La Jolla is due, owing and in default, and release any and all avoidance actions or other pre-petition or post-petition claims or causes of action of any type against La Jolla, including (without limitation) any claims under 11 U.S.C. § 506(c) and any avoidance powers or actions. Davis waives all objections to or defenses on his guaranty to La Jolla of the obligations of the Debtors to La Jolla.

b. Western and Great West waive the right to modify the debt owed to La Jolla or any security for that debt in a manner inconsistent with the Agreement.

c. On or before the new Maturity Date for the secured claim, which is December 21, 2005, Western and/or Great West will pay to La Jolla, either:

7

  i.  Payment of:

  (A) $9,130,000.00 in principal, plus any accrued but unpaid Extension Payment as provided for in Paragraph 3 of this Agreement,

*or*

  (B) the sum of $1,500,000 in principal plus any accrued but unpaid amounts under this Agreement.

  d.  If timely payment is made, as per Paragraph 5c(i)(A), then Western and Great West's debt of $10,427,705 plus per diem interest will be discounted by the sum of $1,297,705.00 and the per diem interest, and the payment of $9,130,000.00 (plus any accrued but unpaid Extension Payment) will be in full satisfaction of all indebtedness owed to La Jolla by Western and Great West.

  e.  If timely payment of the $1,500,000.00 principal payment is made as provided in Paragraph 5c(i)(B), and Western and Great West are not otherwise in default under this Agreement, then this paragraph shall apply:

  (1) The $1,500,000.00 principal payment will be credited against the $10,427,505 and the December 21, 2005, Maturity Date for the remaining principal payment of $8,927,705, will be extended by six (6) months, to the Extended Maturity Date of June 21, 2006. If timely payment is made of the full $8,927,705 within the extended six months period, the indebtedness will be discounted by $1,297,705.00, and the payment of $7,630,000.00 plus any accrued

8

interest but unpaid Extension Payment will be accepted in full satisfaction of all indebtedness owed to La Jolla by Western and Great West.

       f.     Unless this Agreement is modified in writing, and in the absence of a default, all indebtedness owing to La Jolla by Great West and Western will be due and payable either on December 21, 2005, or the extended Maturity Date, if applicable.

      6.    <u>Agreement for Subordination</u>.  Provided that Western and Great West have not defaulted under this Agreement and are not in default at the time, La Jolla will, upon the payment of $1,500,000.00 of principal to La Jolla at any time within one year of December 21, 2004, subordinate its interest under the second priority deed of trust for the property described in Exhibit B to a new loan, subject to subsequent written approval by La Jolla (which approval will not be unreasonably withheld), secured by a new first deed of trust in a maximum principal amount of $11,250,000.00, on the following conditions:

       a.     The proceeds of the new loan are to be used solely for the following purposes: repayment in full of the existing first deed of trust held by Grand Pacific, the $1,500,000.00 to La Jolla, the acquisition costs for the leased fee interest of the Hawthorn property, (approximately $2,500,000.00) cost of renovations, taxes, insurance and other costs to convert Hawthorn Suites to a condominium and interest on the new loan.

9

b.    The interest rate on the new loan does not exceed ten percent (10%) per annum, with no more than five (5) points and a term of not more than twenty-four (24) months.

c.    Prior to obtaining the new loan, Great West will prepare a budget for the conversion and sale of the units to a condominium and obtain La Jolla's written consent to the budget and to the professionals to be employed by Great West, which consent will not be unreasonably withheld.

7.    Mandatory Payments to Third Parties.  Western and Great West agree to pay when due and avoid any default in their obligations to the entities described in Exhibit C, and to provide La Jolla with written confirmation that each required payment has been made, and the date and amount of that payment.  Such confirmation will be made within three business days of the date on which payment is made.  Any payment referenced in Exhibit C will be made on the date specified in that exhibit.  Debtors shall execute and deliver to La Jolla an authorization for release of such payment and status information by the persons or entities listed on Exhibit C within 7 business days of any subsequent request from La Jolla.  Western and Great West represent and warrant that the information contained in Exhibit C is true and correct.  Western and Great West agree that with respect to the information contained in Exhibit C, La Jolla may contact the entities or persons listed on Exhibit C to verify the information provided by Debtors to La Jolla, including confirmation of the amount, date and making of any payments by Debtors.  If there are any

10

changes in the information contained in Exhibit C, Western and Great West will immediately amend and update Exhibit C and provide La Jolla with the Amended Exhibit C.

8. <u>Bankruptcy Stay is Presently Terminated/ Effect of Default.</u> THE STAY UNDER 11 U.S.C. § 362 AGAINST ANY ACTION BY LA JOLLA IS TERMINATED EFFECTIVE WITH THE APPROVAL OF THIS AGREEMENT BY THE BANKRUPTCY COURT. Any default by Western or Great West of any obligation under this Agreement will be grounds for La Jolla, at its option, to declare a default and accelerate the due date of the indebtedness owed to La Jolla, without further notice or demand. If La Jolla declares a default and accelerates the due date of the indebtedness, then:

a. The Maturity Date or Extended Maturity Date, if applicable, will become the date on which the debt is accelerated;

b. All provisions of this Agreement for discounts, credits, interest abatements, agreements to subordinate, and options to extend the Maturity Date, will become void and inapplicable;

c. The interest rate on the indebtedness to La Jolla to be used for all computation purposes at all times will be the contract rate of 14.5%.

d. If La Jolla exercises its option to declare a default and accelerate the debt, (i) La Jolla will have the immediate right to foreclose on its collateral and pursue all other remedies, at law or in equity, against the Debtors and

11

Davis **WITHOUT FURTHER ORDER OR STAY MODIFICATION FROM THE BANKRUPTCY COURT**, and (ii) La Jolla will have the sole right to determine the sequence by which any collateral is sold or foreclosed on. If La Jolla chooses in its sole discretion to apply for a further order modifying the stay or confirming the absence of the bankruptcy stay, it may be granted *ex parte* upon submission to the Bankruptcy Court, with two business days notice to Western and Great West, the Office of the United States Trustee, and any creditor's committee appointed for either of the Debtors, prior to the entry of the order modifying the automatic stay.

       9.    <u>Stipulation</u>. Concurrent with the execution of this Agreement, a stipulation for modification of the automatic stay will be signed by Western, Great West, Davis and La Jolla, and submitted to the Court for approval. The obligation of the parties under the Agreement are subject to the approval of the Bankruptcy Court in both bankruptcy cases, after notice and hearing. Western, Great West, Davis and La Jolla will use their best efforts to obtain approval of the Bankruptcy Court. Until the Bankruptcy Courts enter orders approving this Agreement, the existing financial and monetary obligations of the Debtors under their respective cash collateral orders shall continue to be honored. Nothing in this Agreement will modify or impair any obligation of the Debtors with respect to cash collateral that has accrued prior to the date of the entry of the orders comprising Court approvals of this Agreement under

12

any cash collateral order entered in either of the respective bankruptcy cases of the Debtors.

          10.    <u>Duty to Seek Court Approval</u>. Western and Great West will immediately file and serve a Motion for approval of the Agreement and the actions contemplated by this Agreement, and will seek that approval from the court at the earliest possible date. La Jolla shall have the right to approve the Motion and all stipulations in connection with that motion in form and substance. The Courts' approval of the Motion and stipulation by March 31, 2005, is a condition precedent to the obligation of all signatories to this Agreement, but that date may be extended unilaterally by La Jolla.

          11.    <u>General</u>.

          a.    The application of any sums to interest or principal, the addition of accrued unpaid interest or principal, the acceptance of any other sum by La Jolla to be applied to the principal outstanding under the Note, and the execution of this Agreement shall not constitute a waiver by La Jolla or a cure by Western or Great West of any existing default under the terms of any note, deed of trust or any other loan agreements, security agreements, assignments, personal guarantees , or any other applicable document pertaining to the loan transaction between Western and/or Great West and La Jolla. La Jolla is permitted to apply amounts received as provided herein without causing (i) any reinstatement of the loans or waiver of any obligations under any pertinent documents, (ii) any extension or tolling of the

13

statutorily prescribed time periods for foreclosure proceedings except as specifically set forth herein, or (iii) the invalidity of any Notices of Default or Notices of Sale. Specifically, Debtors agree that the execution of this Agreement shall not change, toll or extend the time periods set forth in any limitations period applicable to claims against Western or Great West and, as additional consideration to La Jolla hereunder, Debtors hereby specifically waive any claim which it might otherwise have that such statutory period has been, or should be, tolled by the execution of this Agreement or La Jolla's application of any amounts paid by or on behalf of Western to the sums due under the Note. Time is of the essence in all aspects of this Agreement.

b. A default by either Debtor will be considered a default by both Debtors.

c. No party will be considered the drafter of this Agreement, and all terms in this Agreement will be given their plain and most reasonable meaning.

d. This Agreement may not be altered, varied, amended or modified in whole or in part except by a subsequent written document specifically referring to this Agreement and executed by the parties hereto.

e. Neither the failure nor delay on the part of the La Jolla to exercise any right, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege under this Agreement preclude any other or further exercise thereof, or the exercise of any

14

other right, power or privilege. The rights and remedies herein expressly provided are cumulative and not exclusive of any rights or remedies which La Jolla would otherwise have. No notice to or demand on the Debtors in any case shall entitle the Debtors to any other or further notice or demand in similar or other circumstances or constitute a waiver of the right of La Jolla to any other or further action in any circumstances without notice or demand. No waiver or consent shall be valid unless in writing and signed by La Jolla, and then only to the extent so specified.

        f.    Except as expressly modified by this Agreement, all mortgages, deeds of trust, guarantees, licenses, assignments of leases, rents or other collateral, security (or security and assignment) agreements and security interests, notes, indemnity agreements and other documents or addenda executed by Western, Great West, Davis, or their predecessors in favor of La Jolla with respect to the loan shall remain in full force and effect.

        g.    Except as specified in the subparagraph f immediately preceding, this Agreement and the documents attached hereto as exhibits, if any, constitute the entire agreement of the parties and supercede all prior and contemporaneous oral and written agreements by and among the parties hereto as to the subject matter hereof.

        h.    This Agreement may be executed in any number of copies, and by the different parties hereto on the same or separate counterparts, each of

U.S. Bankruptcy Court - Hawaii   #04-00072   Dkt # 288   Filed  03/31/05   Page 22 of 29

which shall be deemed to be an original instrument, but all of which together shall constitute but one and the same instrument.

       i.     The Debtors and Davis shall promptly take such further actions, shall execute and deliver and cause the execution and delivery of such additional documents, agreements, instruments and certificates and shall provide such additional information as may be requested by the La Jolla from time to time, and at any time, to more fully evidence effectuate the terms of this Agreement and the transactions contemplated hereby.

       j.     Debtors agree and represent that La Jolla's month-to-moth forbearance and postponement of the nonjudicial foreclosure of the San Diego property described in Exhibit B is at the specific request of Debtors and such request shall be deemed made and renewed with each Extension Payment made by Debtors. Debtors specifically waive the 10-day stay provided by Bankruptcy Rule 4001(a)(3) and waive the 7-day waiting period provided by California Civil Code Section 2024g(d).

       k.     Where any prorations are required with respect to the computation of the payment due at maturity, other than accelerated maturity resulting from default, the per diem rate of the Extension Payment shall be deemed to be $1,633.33/day.

16

I.      The descriptive headings of the various sections of this

Agreement are inserted for convenience of reference only and shall not be deemed to

affect the meaning or construction of any of the provisions hereof.

Executed this __3rd__ day of February 2005.

WESTERN APARTMENT SUPPLY &
MAINTENANCE COMPANY

By _____
Its: _____

GREAT WEST PROPERTIES. INC.

By _____
Its: _____

_____
JERROLD K. GUBEN
Attorney for Debtors.
WESTERN APARTMENT SUPPLY &
MAINTENANCE COMPANY and
GREAT WEST PROPERTIES. INC.

LA JOLLA LOANS, INC.

By _____
Its: _____

_____
JAMES N. DUCA
CORI ANN C. TAKAMIYA.
Attorneys for Secured Creditor.
LA JOLLA LOANS, INC.

17

U.S. Bankruptcy Court - Hawaii   #04-00072   Dkt # 288   Filed  03/31/05   Page 24 of 29

ITEM NO. 1

## EXHIBIT "A"

UNRECORDED GENERAL LEASE NO. S-4212

| | |
|---|---|
| Lessor: | STATE OF HAWAII, by its Board of Land and Natural Resources |
| Lessee: | WALTER C. WITTH and JOHN J. RAGAN |
| Dated: | September 4, 1968 |
| Filed: | State of Hawaii, Department of Natural Resources |
| Term: | 65 years commencing dated hereof, up to and including September 3, 2033 |

The foregoing Lease through mesne assignment(s) was assigned by the following:

ASSIGNMENT OF LEASE

| | |
|---|---|
| Assignor: | TOWA SHINYO MAUI, INC., a Hawaii corporation |
| Assignee: | WESTERN APARTMENT SUPPLY & MAINTENANCE CO., a California corporation |
| Dated: | February 29, 2000 |
| Document No. | 2000-082846 |
| Consent: | Given by Lessor, by instrument recorded as Document No. 2000-82847 |

Said Lease demising the following described premises:

All of that certain parcel of land (being portion(s) of the land(s) described in and covered by government land of Kamaole situate on the West side of Piilani Highway adjoining Land Patent Grant Number 13,225 to Yasuko N. Watanabe and Royal Patent Grant Number 1959 to Malu) situate, lying and being at Kamaole, Wailuku, Kula, Island and County of Maui, State of Hawaii, described as follows:

Beginning at the Southeast corner of this parcel of land, at the Northeast corner of Grant 13225 to Yasuko N. Watanabe and on the West side of Piilani Highway, the coordinates of said point of beginning referred to Government Survey Triangulation Station "PUU O KALI" being 9,644.91 feet South and 20,033.00 feet West and running by azimuths measured clockwise from true South:

Please initial here (CD)

CD 2/3/05

U.S. Bankruptcy Court - Hawaii  #04-00072  Dkt # 288  Filed 03/31/05  Page 25 of 29

FEB 03 05 14 24 FROM PDF D OCONNOR ETAL. ID PAGE 3 7

| 1. | 84° | 30' | | 356.83 | feet along Grant 13225 to Yasuko H. Watanabe and Grant 1959 to Mahi; |
| 2. | 171° | 30' | | 132.00 | feet along Government Beach Reserve; |
| 3. | 264° | 30' | | 383.09 | feet along Government Beach Reserve; |
| 4. | 3° | 07' | | 84.52 | feet along the West side of Piilani Highway; |

5.  Thence along the West side of Piilani Highway, on a curve to the left having a radius of 1,935.86 feet, the chord azimuth and distance being:

| | 2° | 23' | 50" | 48.71 | feet to the point of beginning and containing an area of 1.119 acres, more or less. |

Please initial here          Please initial here

2/3/05

PES 03,2005 00:41                                                Page 3

U.S. Bankruptcy Court - Hawaii   #04-00072   Dkt # 288   Filed  03/31/05   Page 26 of 29

11484

EXHIBIT "A"
Legal Description

1. The estate or interest in the land hereinafter described or referred to is:

A LEASEHOLD AS CREATED BY THAT CERTAIN LEASE DATED MARCH 3, 1978, EXECUTED BY CROWN INVESTMENT GROUP, AS LESSOR, AND RAY V. FORMOST AND ROSIE A. FORMOST, AS LESSEE, AS REFERENCED IN THE DOCUMENT ENTITLED MEMORANDUM, WHICH WAS RECORDED MARCH 6, 1978 AS FILE NO. 78-088106, OFFICIAL RECORDS FOR THE TERM AND UPON AND SUBJECT TO ALL OF THE PROVISIONS CONTAINED IN THE MODIFICATION OF SAID LEASE EXECUTED BY CROWN INVESTMENT GROUP, AS LESSOR, AND RAY V. FORMOST AND ROSIE A. FORMOST, AS LESSEE, DATED MARCH 3, 1978.

2. Title to said estate or interest at the date hereof is vested in:

WESTERN APARTMENT SUPPLY & MAINTENANCE CO., A CALIFORNIA CORPORATION

3. The land referred to herein is situated in the State of California, County of San Diego and is described as follows:

PARCEL 2 OF PARCEL MAP NO. 5051, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, SEPTEMBER 7, 1976.

Please initial here 2/3/05

EXHIBIT B

U.S. Bankruptcy Court - Hawaii #04-00072 Dkt # 288 Filed 03/31/05 Page 27 of 29

1/28/2005

Exhibit C
Contact--All Payment Information
Angela-Packard Mgmt.
808-277-4306 X 304

| | Contact/Phone/Address | Payment Amt. | Payment Due On | Last Payment Made | Next Payment Due | Paid Date | Check No. |
|---|---|---|---|---|---|---|---|
| **Maul Oceanfront Inn** | | | | | | | |
| La Jolla Loans | 11975 El Camino Real, #225, San Diego, CA 92130-Paige McMahan 858-454-1877 | $20,000.00 | 25th | 12/29/2004 | 1/25/2005 | | |
| La Jolla Loans (Sarr) | Same as above; Ron Rex (808) 864-8283, All payment to La Jolla, Coples | 27,000.00 (+/-) | 10th | 12/10/2004 | 1/10/2005 | | |
| Ground Lease | U. Chow - Dept. of Atty Generals 465 S. King Str, #300 Honolulu, HI 96513 808-587-2 | $43,869.60 | Mar/Sept | 8/4/2004 | 3/4/05 | | |
| Ground Lease | State of HI, DNLR Box 621, Honolulu HI 96809 Dladra Mamiya 808-984-9103 | $127.00 | 10th | 12/10/2004 | 01/05 | | |
| Property Taxes-TMK | TMK #3-9-004-29 Director of Finance-Real Property Tax Division County of Maui 808-270-7697 | $25,399.32 | EverySix Months | 9/22/2004 | 2/27/2005 | | |
| Property Insurance | Agent-Chuck Cielo-Insurance Factors 808-979-8122, 1325 S. Kihel Rd, #210, Kihel, HI 96753-Landmark American Financed by AICCO | $25,300.00 on 2/28/05 | $6000.00 on 3/28/05 | 10/28/2004 | 3/28/2005 | | |
| TAT (Hotel tax) | State of HI, Dept. of Taxation P.O. Box 1427, Wailuku, HI 98793-8427-Nee Yokomura 808-587-1675 | Varies | 15th (For prior month) | 12/28/2004 | 1/28/2005 | | |
| | **Contact/Phone/Address** | **Payment Amt.** | **Payment Due On** | **Last Payment Made** | **Next Payment Due** | **Paid Date** | **Check No.** |
| **Hawthorne Suites** | | | | | | | |
| Ground Lease | Crown Investments, JR Givens Attorney 619-233-8386, File #78958104, P.O. Bx 3841, San Diego, CA 92163 | $8,119.90 | 5th | 12/3/2004 | 1/5/2005 | | |
| 1st-Grand Pacific | Richard Too-323-780-8881-Loan 201004-1255 Corporate Center Drive, Monterey Park, CA 91754 | $27,783.00 | 10th | 1/24/2005 | 2/10/2005 | | |
| Property Taxes APNA | APNA844-020-28 San Diego County-Tax Collector P.O. Box 129009, San Diego, CA #086984501-431 N. | $8,318.00 | Accrued-w/last paid 10th | 1/24/2005 | 2/10/2005 | | |
| Property Insurance | Pay to Andy Wu (Agent)-714-772-4771 Sirius America Ins. Co. #086984501-431 N. Brookhurst, #120, Anaheim, CA 92801 | $1,472.00 | 15th | 12/7/2004 | 1/1/2005 | | |
| TAT (Hotel Tax) | City of San Diego Treasurer, P.O. Box 1222, San Diego, CA 92122 | Varies | 30th For Prior Month | 12/15/2004 | 1/30/2005 | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

I.    The descriptive headings of the various sections of this

Agreement are inserted for convenience of reference only and shall not be deemed to

affect the meaning or construction of any of the provisions hereof.

Executed this _3rd_ day of February 2005.

WESTERN APARTMENT SUPPLY &
MAINTENANCE COMPANY

By _____
Its: _____

GREAT WEST PROPERTIES, INC.

By _____
Its: _____


JERROLD K. GUBEN
Attorney for Debtors,
WESTERN APARTMENT SUPPLY &
MAINTENANCE COMPANY and
GREAT WEST PROPERTIES, INC.


LA JOLLA LOANS, INC.

By _____
Its: _____


JAMES N. DUCA
CORI ANN C. TAKAMIYA,
Attorneys for Secured Creditor,
LA JOLLA LOANS, INC.

17

U.S. Bankruptcy Court - Hawaii   #04-00072   Dkt # 288   Filed  03/31/05   Page 29 of 29